727 S.E.2d 422

**The STATE, Respondent,**

v.

**Chris Anthony LIVERMAN, Petitioner.**

No. 27130.

Supreme Court of South Carolina.

Heard Feb. 23, 2012.

Decided June 6, 2012.

132

A. Mattison Bogan, of Nelson Mullins Riley & Scarborough, of Columbia, Chief Appellate Defender Robert M. Dudek, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, and Daniel E. Johnson, of Columbia, for Respondent.

Justice KITTREDGE.

We granted a writ of certiorari to review the court of appeals' decision in *State v. Liverman,* 386 S.C. 223, 687 S.E.2d 70 (Ct.App.2009). We affirm in result.

Petitioner Chris Anthony Liverman was convicted of two counts of murder and sentenced to life imprisonment. The court of appeals affirmed. Petitioner sought certiorari with respect to the claim that the trial court refused to conduct a "full" *in camera* hearing pursuant to *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).[1] Petitioner contended the eyewitness's identification of him as the shooter at a

---

1. At the court of appeals, Petitioner also challenged the admission of testimony regarding the meaning of certain tattoos on Petitioner's body. The court of appeals rejected Petitioner's argument that the testimony was unduly prejudicial. Petitioner did not seek certiorari concerning the court of appeals' ruling regarding the tattoos.

police-orchestrated show-up was unduly suggestive and there-fore tainted the in-court identification. The trial court, relying on *State v. McLeod,* 260 S.C. 445, 196 S.E.2d 645 (1973), did conduct an *in camera* hearing and found the pretrial identifi-cation was reliable, based primarily on the witness's previous knowledge of Petitioner.

Following the court of appeals' decision, the United States Supreme Court issued its opinion in *Perry v. New Hampshire,* 565 U.S. ——, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012), in which the Supreme Court made clear that due process requires a trial court to conduct a preliminary assessment of the reliabili-ty of an eyewitness identification made under suggestive circumstances arranged by law enforcement. The case before us involves the intersection of a suggestive police show-up identification procedure and an eyewitness who knows the accused. In *McLeod,* we held that the procedural safeguard of a pretrial hearing to determine the reliability and ultimate admissibility of eyewitness identification testimony was not necessary where the eyewitness knows the accused. *McLeod* cannot stand in light of *Perry,* and we overrule *McLeod* insofar as it creates a bright-line rule excusing a *Neil v. Biggers* hearing where the eyewitness knows the accused. We nevertheless affirm Petitioner's convictions and sentence because any error in failing to conduct a *Neil v. Biggers* hearing was harmless.

## I.

## BACKGROUND

### A.

On the evening of August 26, 2004, two minor victims were shot and killed outside of one of the victim's homes on T.S. Martin Drive in Columbia, South Carolina. The shooting was gang-related.[2] Officers from the Columbia Police Department responded to the scene. A witness, Tyrone Smith, identified

---

2. The evidence indicates that Petitioner and several other witnesses were members of the Dead Folk Nation gang and that the incidents leading up to and through the shooting were related to an altercation with members of a rival gang, the Bloods. The facts surrounding the murders are set forth fully in the court of appeals' opinion.

the shooter to Investigator Joe Gray. Tyrone recognized the shooter as "Baby Jesus," the nickname of Petitioner. He further described the type of gun Petitioner used, and described Petitioner as wearing a white shirt, shorts, reflective sneakers, and a camouflage bandana on his head.

Shortly after the shooting, Petitioner was apprehended by officers in the nearby woods. Upon hearing officers had seized a possible suspect, Investigator Gray drove Tyrone to the woods, parked his vehicle approximately twenty feet from the car in which Petitioner was detained, and turned on the high beam lights. Petitioner was removed from the police vehicle and stood in front of Investigator Gray's car. There, from the back seat of Investigator Gray's vehicle, Tyrone confirmed Petitioner was the person he saw fire the shots that killed the two victims.

## B.

Defense counsel moved for a *Neil v. Biggers* hearing regarding Tyrone's identification. The State, however, opposed a *Neil v. Biggers* hearing. Relying on *McLeod*, the State contended that the constitutional safeguards applicable to *Neil v. Biggers* are not necessary when the witness knows the accused. The able trial judge proceeded cautiously and required the State to proffer Tyrone's testimony. Tyrone, age 19, testified he knew Petitioner by the name "Baby Jesus" and that he had known Petitioner as an acquaintance since elementary school. Petitioner once lived at the Saxon Homes Apartment Complex, where Tyrone's aunt lived. When Tyrone was about 12 years of age, he and Petitioner "hung out" at the apartment complex with a mutual friend, "Goo." Tyrone had seen Petitioner at McDonald's (where Petitioner worked) on two occasions. On the day of the murders, Tyrone saw Petitioner at the nearby Bayberry Apartments. At this point in Tyrone's testimony, the State rested its presentation, but Petitioner objected. The trial court agreed with the State's position but required an additional showing concerning "what was going on at the time the identification was made." [3]

---

3. The trial court stated: "Before I can examine the totality of the circumstances I think I still have to hear exactly what was going on at

Tyrone then testified as to where he watched the shooting occur, as well as his ability to identify Petitioner. According to Tyrone, he observed the shooting while looking out of a second story window in his house across the street on T.S. Martin. Tyrone stated he could see a group of men, including Petitioner, standing a short distance from a street light on the corner. After the murders, Tyrone promptly identified Petitioner as the shooter and provided police with a description of Petitioner's clothing. Petitioner was apprehended nearby, and Tyrone described the show-up arranged by police through which Tyrone confirmed his prior identification of Petitioner.

Initially, the trial court ruled the identification testimony was admissible pursuant to *McLeod:* "Based on what has been presented here I think the relationship or at least a knowledge existed and I think whether it was sufficient knowledge it would be [sic], go more toward the weight of the testimony rather than the admissibility of it." The trial court provided a secondary basis for admitting the evidence:

But in addition to that I find that sufficient evidence has been shown by the State under the totality of the circumstances to make it an identification. It is permissible. And I know the argument would be made that at a showup identification where the defendant was the only one there might be overly suggestive but at the same time the witness who testified that he knew the defendant, he knew him from elementary school, from seeing him at McDonald's, from seeing him on Bay Berry [sic] on the date of the shooting. He knew him by his nickname, he identified the shooter by nickname to the officer prior to him being taken to the second location. Based on that t will permit the identification testimony and you can still argue about its weight.

### C.

At trial, Tyrone testified extensively regarding his previous knowledge of Petitioner and what he witnessed the night of the shooting. Both Tyrone and Investigator Gray testified as to Tyrone's out-of-court identification. In addition to Tyrone's testimony, the State offered the testimony of other witnesses

the time the identification was made. For that reason I will let the State continue examination as to the actual identification."

who presented further incriminating evidence against Petitioner. Two witnesses testified Petitioner was armed with a gun the day of the shooting and indicated he planned to go to T.S. Martin that night. Diego Thompson placed himself at the scene of the murders with Petitioner and testified that Petitioner and another male began shooting, while the others in the group ran towards the woods. Finally, the State presented the testimony of Petitioner's fellow gang member, Shante, who testified that shortly after the shooting, she overheard Petitioner discussing the shooting where they were "spraying" gunfire and two children were shot.

The defense thoroughly challenged the State's case. Defense counsel argued to the jury that the State's witnesses, especially Thompson, fabricated Petitioner's involvement to deflect from their own guilt. Defense counsel also attacked Tyrone's testimony. Specifically, counsel maintained that Tyrone was mistaken about his identification of Petitioner as the shooter because he did not know Petitioner with any familiarity and he misidentified Petitioner in an incident earlier in the day. Ultimately, the jury found Petitioner guilty of both murders.

## D.

On appeal, Petitioner repeated his challenge to the trial court's failure to conduct a "full" *Neil v. Biggers* hearing. The trial court erred, Petitioner contended, in refusing to conduct a more extensive hearing when Petitioner alleged the out-of-court identification was procured by law enforcement through unduly suggestive procedures. Petitioner argued that the State failed to show Tyrone had sufficient prior knowledge of Petitioner to overcome the unduly suggestive nature of the out-of-court identification. The court of appeals rejected Petitioner's argument and affirmed his conviction.

## II.

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Whether an eyewitness identification

is sufficiently reliable is a mixed question of law and fact. *State v. Moore*, 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000). In reviewing mixed questions of law and fact, where the evidence supports but one reasonable inference, the question becomes a matter of law for the court. *Id.* Generally, the decision to admit an eyewitness identification is at the trial judge's discretion and will not be disturbed on appeal absent an abuse of discretion. *Id.*

## III.

## ANALYSIS

 "A criminal defendant may be deprived of due process of law by an identification procedure arranged by police which is unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Traylor*, 360 S.C. 74, 81, 600 S.E.2d 523, 526 (2004). "An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." *Id.*

 In *Neil v. Biggers*, the United States Supreme Court set forth a two-pronged inquiry to determine whether due process requires suppression of an eyewitness identification. Due process requires courts to assess, on a case-by-case basis, whether the identification resulted from unnecessary and unduly suggestive police procedures, and if so, whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Biggers*, 409 U.S. at 198, 93 S.Ct. 375. Under the totality of the circumstances, the factors to be considered in assessing the reliability of an otherwise unduly suggestive identification procedure are: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (citing *Biggers*, 409 U.S. at 199–200, 93 S.Ct. 375).

Our courts have held this determination should be made during an *in camera* hearing, outside of the presence of the jury. *See State v. Ramsey*, 345 S.C. 607, 613, 550 S.E.2d 294, 297 (2001) (holding that generally, a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as a person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous, illegal identification or confrontation); *State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992) (same); *see also* Rule 104(c), SCRE (providing that "[h]earings on the admissibility of ... pretrial identifications of an accused shall in all cases be conducted out of the hearing of the jury"). "The purpose of the *in camera* hearing is to determine whether the in-court identification was of independent origin or was the tainted product of the circumstances surrounding the prior, out-of-court identification." *Ramsey*, 345 S.C. at 613, 550 S.E.2d at 297.

A year after *Neil v. Biggers*. this Court decided *McLeod*. in which we held that a pretrial hearing is not necessary where a witness knows the accused. In *McLeod*, during a physical struggle with her attacker, the victim exclaimed "oh, you Hattie's boy," causing her attacker to flee. 260 S.C. at 447, 196 S.E.2d at 645. Following the attack, the victim went to a friend's house and stated only the phrase "Hattie's boy." Thereafter, the defendant was arrested and taken to the victim's home, where she identified him as her attacker, although she did not know his actual name. *Id.*

Regarding the fairness of the pretrial identification procedure used by law enforcement, this Court found it was "apparent from the record that [the victim] knew the defendant. She had seen him many times at a neighborhood store near their home; she knew the defendant's mother and knew him to be her son." *Id.* at 448, 196 S.E.2d at 645. The Court reasoned that previous United States Supreme Court cases [4] mandating pretrial procedural safeguards represented an "attempt to avert the danger of mistaken identity by establishing

---

4. Notably, *McLeod* (1973) does not reference *Neil v. Biggers* (1972), but does cite to three of its predecessors, including *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

mandatory constitutional and procedural safeguards." *Id.* at 448, 196 S.E.2d at 646. However, the Court found those rules were never intended to apply where the victim knew the accused, *Id.; see also In re Robert D.,* 340 S.C. 12, 530 S.E.2d 137 (Ct.App.2000) (finding *Neil v. Biggers* was not applicable because the identification was arranged by school officials, not police officers, and finding, based upon *McLeod,* that a pretrial hearing was not necessary where the victim knew the defendant by his first name, recognized him as a friend of her classmates, and remembered he watched movies with her class).

■ In *Perry v. New Hampshire,* the Supreme Court refused to extend the reach of identification due process protections into areas where an identification is not procured by state action.[5] 565 U.S. ——, 132 S.Ct. at 736–38. While acknowledging that eyewitness evidence is inherently imperfect, the Court stated: "The fallibility of eyewitness evidence does not, *without the taint of improper state conduct,* warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.* at 728 (emphasis added). However, in refusing to expand judicial screening to *all* eyewitness identifications, the Supreme Court reemphasized the necessity of pretrial judicial review when an identification is infected by improper police influence, as expounded by *Neil v. Biggers* and its progeny. Thus, *Perry* mandates that preliminary judicial inquiry is required once it is contended that an identification is obtained under unnecessarily suggestive circumstances arranged by state action, regardless of the witness's prior knowledge of the accused. Therefore, we overrule

---

5. The identification of the defendant in *Perry* was not procured by state action. When an officer responding to the police call asked the eyewitness to describe the man breaking into cars, the witness pointed to her kitchen window and said the man she saw breaking into the car was standing in the parking lot, next to a police officer. The trial court denied the defendant's motion to suppress the witness's identification. On appeal, the defendant argued that it was error to require an initial showing that police arranged a suggestive identification procedure. *Perry,* 565 U.S. at ——, 132 S.Ct. at 720–21. However, the Supreme Court refused to extend pretrial protections for eyewitness identifications that are not the result of police-arranged tactics. *Id.* at 736.

*McLeod* to the extent it permits circumvention of a *Neil v. Biggers* hearing.

▮ Here, the trial court went beyond the scope of a *McLeod* hearing and required testimony related to Tyrone's ability to identify Petitioner as the shooter, as well as the circumstances surrounding the show-up procedure arranged by the police. Petitioner maintains that he was denied a "full" *Neil v. Biggers* hearing. The State, having adamantly objected to a *Neil v. Biggers* hearing at trial, now suggests we treat the trial court's handling of the matter as the functional equivalent of a *Neil v. Biggers* hearing. While the trial court required the State to submit evidence that has many of the traditional features of a *Neil v. Biggers* hearing (and the trial court made concomitant *Neil v. Biggers* findings), we decline to hold that the pretrial hearing fully comported with due process requirements. Even assuming error, however, we are firmly persuaded that such error was harmless.

"A harmless error analysis is contextual and specific to the circumstances of the case." *State v. Byers*, 392 S.C. 438, 448–49, 710 S.E.2d 55, 60 (2011). No definite rule of law governs the finding that an error was harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *State v. Reeves*, 301 S.C. 191, 193–94, 391 S.E.2d 241, 243 (1990). In considering whether error is harmless, a case's particular facts must be considered along with various factors including: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *State v. Clark*, 315 S.C. 478, 481, 445 S.E.2d 633, 635 (1994) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

Although *McLeod* cannot survive *Perry* as a standalone basis for circumventing a *Neil v. Biggers* hearing, the fact that an identification witness knows the accused remains a significant factor in determining reliability. The suggestive nature of a show-up is mitigated by the witness's prior knowledge of the accused. We concur with those jurisdictions that consider

the show-up identification procedure, normally considered unduly suggestive, as merely confirmatory. *See State v. Taylor,* 594 N.W.2d 158 (Minn.1999) (holding that the show-up procedure was not suggestive but merely confirmatory where witness previously singled out assailant by nickname and had seen him around her apartment building at least ten times before the show-up took place); *People v. Rodriguez,* 79 N.Y.2d 445, 583 N.Y.S.2d 814, 593 N.E.2d 268, 272 (1992) ("A court's invocation of the 'confirmatory identification' exception is thus tantamount to a conclusion that, as a matter of law, the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification.").

After conducting a pretrial hearing, the trial court was satisfied that Tyrone knew Petitioner before the shooting and Tyrone's identification was sufficiently reliable because he identified Petitioner by his nickname to Investigator Gray prior to the suggestive police orchestrated show-up. Further, a review of Tyrone's trial testimony indicates that his in-court identification of Petitioner as the shooter originated not from any taint associated with the suggestive show-up but from Tyrone's prior association with Petitioner and his observation of Petitioner at the time of the shooting. Thus, despite the lack of a full *Neil v. Biggers* hearing, Tyrone's in-court identification was nonetheless properly admitted as it had an independent origin. *See Ramsey,* 345 S.C. at 613, 550 S.E.2d at 297 ("The purpose of the *in camera* hearing is to determine whether the in-court identification was of independent origin or was the tainted product of the circumstances surrounding the prior, out-of-court identification."); *State v. Byrd,* 40 N.C.App. 172, 252 S.E.2d 279 (1979) (finding no prejudicial error in failing to hold a voir dire hearing where evidence indicated eyewitness had known defendant for five or six years, recognized him at the scene, and gave his description to an officer before a show-up, the eyewitness's in-court identification originated from his observation of defendant at the scene of the crime).

Our decision to uphold Petitioner's convictions is reinforced by the protections available to an accused at trial. We must "take account of other safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability." *Perry,* 565

U.S. at —, 132 S.Ct. at 728. In *Perry,* the Supreme Court articulated safeguards available to parties in light of its recognition that the jury, not the judge, traditionally determines the reliability of evidence:

> These protections include the defendant's Sixth Amendment right to confront the eyewitness. Another is defendant's right to the effective assistance of an attorney, who can expose the flaws in the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments. Eyewitness-specific jury instructions, which many federal and state courts have adopted, likewise warn the jury to take care in appraising identification evidence. The constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt also impedes convictions based on dubious identification evidence.

565 U.S. at —, 132 S.Ct. at 728–29 (internal citations omitted).

Many of the safeguards noted by the Supreme Court in *Perry* were at work in Petitioner's trial. The reliability of the Tyrone's testimony was vetted, albeit perhaps in limited form, at the pretrial hearing. Without question, however, the reliability of Tyrone's testimony was fully vetted at trial. During opening statements, Petitioner's counsel cautioned the jury about the fallibility of Tyrone's identification.[6] While cross-examining Tyrone, Petitioner's counsel repeatedly discussed the weaknesses of Tyrone's identification, including: his inability to remember details of his prior encounters with Petitioner; the distance between Tyrone's window and the shooting two houses away; his alleged mistaken identification of Petitioner as the man who earlier in the day pointed a gun at him; inconsistencies in Tyrone's statements concerning whether Petitioner was wearing a bandana on his face; the lateness of the hour and lack of sufficient lighting; Tyrone's inaccurate statement that the shooter was wearing New Balance sneakers; and Petitioner's position next to a police car at the moment Tyrone made an identification.

---

6. Defense counsel stated "I submit to you ladies and gentlemen that from the very beginning, from that first night, the police were put on notice that the basis of their arrest, that identification, was a bad one, that it was a mistake."

During her closing argument, Petitioner's counsel reminded the jury of such weaknesses. Moreover, the trial court instructed the jury thoroughly on identification testimony[7] and the factors that should be considered when evaluating it. The trial court also instructed the jury that the defendant's guilt must be proved beyond a reasonable doubt and specifically advised that the State must prove "beyond a reasonable doubt the identity of the defendant as the perpetrator of the offenses with which he stands charged."

Having thoroughly reviewed the record, we can say with assurance that "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Lowry v. State*, 376 S.C. 499, 507, 657 S.E.2d 760, 764 (2008) (quoting *Arnold v. State*, 309 S.C. 157, 165, 420 S.E.2d 834, 838 (1992).

## V.

For the foregoing reasons, the decision of the court of appeals is affirmed in result.

**AFFIRMED IN RESULT.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.

---

7. Beyond the traditional charge concerning the jury's determination of the credibility of witnesses, the trial court gave the following instruction regarding identification testimony:

I would further charge you, Mr. Foreman and ladies and gentlemen, that in appraising identification testimony of a witness, you should consider the following: are you convinced that the witness had the capacity and an adequate opportunity to observe the offender; whether the witness or a witness had an opportunity to observe an offender at the time of the offense will be affected by such matters as how long or short a time was available; the circumstances under which an accused is presented for identification, how far or how close the witness was; how good the lighting conditions were; whether the witness had [ ] occasion to see or know the person in the past.

Again, I will charge you that the burden of proof on the prosecution extends to every element of the offense charged, and this includes the burden of proof and beyond a reasonable doubt the identity of the defendant as the perpetrator of the offenses with which he stands charged.

If examining this testimony you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.