745 S.E.2d 137

**The STATE, Respondent,**

**v.**

**Henry Jermaine DUKES, Appellant.**

**Appellate Case No. 2011–196667.**

**No. 5148.**

Court of Appeals of South Carolina.

Heard April 3, 2013.

Filed June 26, 2013.

Rehearing Denied July 24, 2013.

554

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General W. Edgar Salter III, all of Columbia; and Solicitor Jimmy A. Richardson II, of Conway, for Respondent.

FEW, C.J.

A jury found Henry Dukes guilty of murder for the shooting death of Andrico Gowans. Dukes argues the trial court erred in refusing to suppress an eyewitness's identification of Dukes for two reasons: (1) the pretrial hearing did not comport with due process because the detective who conducted the identification procedure was unavailable to testify; and (2) the identification procedure was impermissibly suggestive and created a substantial likelihood of misidentification. We affirm.

## I. Facts and Procedural History

On the morning of November 2, 2007, Cornelius Ford witnessed Gowans' murder. That afternoon, Ford met with Detective Sean Addison at the Conway Police Department and identified Dukes as the shooter.

Before trial, Dukes asked the court to suppress Ford's out-of-court identification because the identification procedure used was impermissibly suggestive. The trial court conducted a hearing, where the State called Ford to testify to what happened when he made the identification. Ford told the court he went to the police station with his father after the shooting to give a statement. After Ford gave a description of the shooter, Addison suggested Ford look at photographs, "like a photo book," to see if he could identify the person who shot Gowans. When Addison got up from the table to get the photo book, Ford saw other photographs in a file Addison had on the table. Ford identified Dukes from one of the photographs he saw in Addison's file. Ford testified Addison did not present the photos to him or instruct him to choose one.

The State then called Ford's father, Rasheed Muhammad, who was present when Ford made the identification. Muhammad told the court Addison offered to show a book of photographs to Ford, but before that occurred, "[photographs] were put on the table." From those photographs, Ford identified Dukes. Muhammad testified Addison did not suggest which photograph Ford should select.

Dukes presented no witnesses but read an excerpt of Addison's investigative report, in which Addison wrote "the photos were presented to ... Ford one at a time."[1] Dukes asserted that because Addison's report contradicted Ford's recollection of what happened, "the State [could] not meet its burden" of showing the identification procedure was not impermissibly suggestive without Addison's testimony.[2]

The trial court ruled it was not "necessary for the court to hear [Addison's] testimony," and denied Dukes' motion, stating:

It does not appear, even taking into consideration the report of [Addison], that there was any corrupting effect, that there was any intentional act, that there was any deliberate act, there was any act by the police of a suggestive manner.... The seeing of the photographs was either done

1. Addison's investigative report was not entered into evidence.

2. Addison was unavailable because he was serving on active military duty in Afghanistan at the time of trial.

accidently through the looking at a file or in the process that the Court finds was not suggestive in any manner. . . .

At trial, Ford and Muhammad testified to Ford's out-of-court identification of Dukes. Ford also gave an in-court identification. The jury found Dukes guilty of murder, and the court sentenced him to forty-seven years in prison.

## II. Identification Evidence

An out-of-court identification of the defendant violates due process and must be suppressed when the identification procedure used by police was impermissibly suggestive and conducive to a substantial likelihood of misidentification. *State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 425 (2012). A witness's subsequent in-court identification is inadmissible "if a suggestive out-of-court identification procedure created a very substantial likelihood of *irreparable* misidentification." *State v. Traylor*, 360 S.C. 74, 81, 600 S.E.2d 523, 526 (2004) (emphasis added); *see also Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410 (1972) ("While the phrase ['a very substantial likelihood of irreparable misidentification'] was coined as a standard for determining whether an in-court identification would be admissible . . ., with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself.").

Trial courts employ a two-pronged inquiry to determine whether due process requires suppression of an out-of-court eyewitness identification. *Liverman*, 398 S.C. at 138, 727 S.E.2d at 426. First, the court must determine whether the identification resulted from "unnecessarily suggestive" police procedures. *Biggers*, 409 U.S. at 198–99, 93 S.Ct. at 381–82, 34 L.Ed.2d at 410–11; *see also Perry v. New Hampshire*, ―― U.S. ――, ―― n. 1, 132 S.Ct. 716, 721 n. 1, 181 L.Ed.2d 694, 703 n. 1 (2012) (stating "what triggers due process concerns is police use of an unnecessarily suggestive identification procedure"); *Liverman*, 398 S.C. at 138, 727 S.E.2d at 426 (stating the standard for impermissible suggestiveness as whether the police procedures were "unnecessary and unduly suggestive"); *Traylor*, 360 S.C. at 81, 600 S.E.2d at 526 (stating the standard as whether the police procedures were "unduly suggestive"). If the court finds the identifica-

tion did not result from impermissibly suggestive police procedures, the inquiry ends there and the court does not need to consider the second prong. *See United States v. Sanders,* 708 F.3d 976, 984 (7th Cir.2013) (citing *Perry* for the proposition that "courts will only consider the second prong if a challenged procedure does not pass muster under the first"). If the court finds, however, that the police used an impermissibly suggestive identification procedure, it must then determine whether the identification was nevertheless "so reliable that no substantial likelihood of misidentification existed." *Liverman,* 398 S.C. at 138, 727 S.E.2d at 426 (citing *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411).

## A. The Sufficiency of the Hearing

Dukes argues the suppression hearing conducted by the trial court did not comport with due process because "the State could not meet its burden" of showing the identification procedure was not impermissibly suggestive without Detective Addison's testimony. We hold Addison's absence from the hearing did not violate Dukes' due process rights.

 Procedural due process requires "adequate notice of the proceeding, the opportunity to be heard in person, the opportunity to introduce evidence, the right to confront and cross-examine adverse witnesses, and the right to meaningful judicial review." *Dangerfield v. State,* 376 S.C. 176, 179, 656 S.E.2d 352, 354 (2008). It does not, however, require any particular form of procedure. *See S.C. Dep't of Soc. Servs. v. Wilson,* 352 S.C. 445, 452, 574 S.E.2d 730, 733 (2002) (stating "due process is flexible and calls for such procedural protections as the particular situation demands" (citation and quotation marks omitted)). Due process also does not require all witnesses to testify. *See United States v. Morsley,* 454 Fed. Appx. 191, 193 (4th Cir.2011) (stating the constitution "does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses" (citation omitted)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Wilson,* 352 S.C. at 452, 574 S.E.2d at 734.

■ Dukes argues he was denied due process because the key witness, the investigating officer, was unavailable to testify. We disagree and hold the trial court afforded Dukes all that due process required in this particular situation. The trial court gave Dukes notice of the hearing and the opportunity to be present. The court also gave him the opportunity to cross-examine the State's witnesses, offer his own evidence, and argue his position. Dukes argued the specific reasons Addison's testimony was essential, but the trial court determined otherwise, specifically stating, "I find it is not necessary for the court to make the determination on your motion to suppress the identification to have the testimony of the officer in this particular case." Thus, the trial court was able to determine from the testimony of the State's witnesses that nothing the police did was suggestive. Finally, this appeal is Dukes' opportunity for judicial review. We find the hearing did not violate Dukes' due process rights.

In *Liverman,* our supreme court addressed the sufficiency of a suppression hearing for identification evidence. The specific issue the court addressed was whether a trial court must conduct a "full" inquiry into the reliability of the evidence when the police procedure is impermissibly suggestive, but the eyewitness knew the accused before the identification procedure was conducted. *See* 398 S.C. at 134, 727 S.E.2d at 423 ("The case before us involves the intersection of a suggestive police show-up identification procedure and an eyewitness who knows the accused."). Relying on *Perry,* the court held that "pretrial judicial review [is necessary] when an identification is infected by improper police influence." 398 S.C. at 140, 727 S.E.2d at 427. Thus, the court held a suppression hearing is required to determine the reliability of the suggestive identification even though the eyewitness previously knew the defendant. *Id.* On the facts before it, the *Liverman* court "decline[d] to hold that the pretrial hearing fully comported with due process requirements" but found that any error was harmless. 398 S.C. at 141, 727 S.E.2d at 427.

To explain our holding that the hearing in this case did comport with due process, it is important to note how this case is different from *Liverman.* . The police procedure in *Liverman* was the classic show-up lineup, 398 S.C. at 133–35, 727 S.E.2d at 423–24, which our courts have held are imper-

missibly suggestive in most circumstances. *See State v. Moore,* 343 S.C. 282, 287, 540 S.E.2d 445, 448 (2000) (stating "[s]ingle person show-ups are particularly disfavored in the law," and holding on facts very similar to *Liverman* that "it is patent the show-up procedure used was unduly suggestive"). *Liverman* arose, therefore, under the second prong of *Biggers*—reliability. We decide this appeal under the first prong—suggestiveness. Under *Perry* and *Liverman,* judicial inquiry into reliability is required *every* time the police orchestrate a suggestive identification procedure. Under *Perry* and cases like *Sanders,* however, judicial inquiry into reliability is never required unless (1) the police (2) orchestrated an identification procedure (3) that was impermissibly suggestive. *Perry* and *Sanders* remove this case from the ambit of *Liverman* because the trial court here found there was no impermissibly suggestive police conduct.

This does not mean, however, that Dukes was not entitled to a hearing that provided all the elements of due process. It does mean that the sufficiency of the hearing is governed by traditional concepts of procedural due process, not by the due-process-based duty of the court to inquire into the reliability of evidence upon which *Liverman* was decided. *Liverman,* 398 S.C. at 140, 727 S.E.2d at 427 (noting *Perry* "reemphasized the [due-process-based] necessity of pretrial judicial review when an identification is infected by improper police influence"). In this case, the trial court was not able to determine exactly what Addison did. However, the court was able to determine that either Ford saw the photographs accidentally or Addison showed them to him one at a time. The court then determined that neither of those alternatives involved suggestive police conduct. Our holding that Addison's absence from the hearing did not deprive Dukes of due process, especially given the alternative nature of the trial court's ruling, is dependent on the fact that the issue here is suggestiveness—not reliability. We do not address whether a key witness's presence would have been necessary for the court to fulfill its duty to inquire into reliability if the court had determined the police conduct was unnecessarily suggestive. *See* 398 S.C. at 140, 727 S.E.2d at 427 (" 'The fallibility of eyewitness evidence does not, *without the taint of improper state conduct,* warrant a due process rule requiring a trial

court to screen such evidence for reliability before allowing the jury to assess its creditworthiness.' " (quoting *Perry*, —— U.S. at ——, 132 S.Ct. at 728, 181 L.Ed.2d at 711)).

## B. The Suggestiveness of the Identification Procedure

Dukes also argues the trial court erred in finding the out-of-court identification procedure used by the police was not unnecessarily suggestive. He initially frames his argument in terms of the burden of proof, contending that because Addison was unavailable to testify, the State could not meet its burden.

We decline to resolve this issue in terms of whether the trial court properly applied the burden of proof. First, our supreme court has never placed the burden of disproving suggestiveness on the State. The Fourth Circuit, whose decisions regarding federal constitutional law are binding on us,[3] has held the defendant bears the burden of proving the identification procedure was impermissibly suggestive. *See United States v. Saunders*, 501 F.3d 384, 389 (4th Cir.2007) ("[T]he defendant must show that the photo identification procedure was impermissibly suggestive.").[4] Second, it appears the trial

---

3. *State v. Ford Motor Co.*, 208 S.C. 379, 390, 38 S.E.2d 242, 247 (1946) (stating "federal [cases] ... are controlling of the meaning and effect of the Federal Constitution").

4. *Accord Perry*, —— U.S. at ——, 132 S.Ct. at 733, 181 L.Ed.2d at 716 (Sotomayor, J., dissenting) ("[T]he defendant has the burden of showing that the eyewitness identification was derived through impermissibly suggestive means." (citation and internal quotation marks omitted)); *United States v. Martin*, 391 F.3d 949, 952 (8th Cir.2004) ("[The defendant] must first establish that the photographic spreads shown to [the witnesses] were impermissibly suggestive." (quotations omitted)); *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir.2003) ("[T]he defendant has the burden of proving that the identification procedure was impermissibly suggestive."); *English v. Cody*, 241 F.3d 1279, 1282 (10th Cir.2001) ("[A] defendant has the initial burden of proving that the identification procedure was impermissibly suggestive."); *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992) ("[A] defendant bears the burden of proving the identification procedure was impermissibly suggestive."); *Bernal v. People*, 44 P.3d 184, 191 (Colo.2002) ("[A] court must determine whether the photo array was impermissibly suggestive, which the defendant has the burden of proving."); *State v. Fullwood*, 193 Conn. 238, 476 A.2d 550, 554 (1984) ("A defendant ... bears the initial burden of proving that the identification resulted from an unconstitutional procedure."); *State v. Araki*, 82 Hawai'i 474, 923 P.2d 891, 901 (1996) (stating the defendant has the burden to prove the pretrial

court did place the burden of proof on the State. At the beginning of the hearing, Dukes' counsel stated, "The State can't prove its burden and it's suggestive." The State then put up its evidence. Under these circumstances, the question of whether the burden of proof was properly applied makes no difference because the trial court applied it in the manner most beneficial to Dukes.

█ Therefore, we review the trial court's ruling—that the procedure used was not suggestive—to determine whether it is supported by the evidence. Ford and Muhammad testified to how Ford identified Dukes and particularly to Addison's conduct during the procedure. Dukes presented no witnesses but described the contents of Addison's investigative report, which contradicted Ford and Muhammad's testimony. Dukes argues this evidentiary discrepancy demonstrates there is insufficient evidence for the court to determine whether the procedure was impermissibly suggestive. We disagree. While Addison's testimony would have been helpful, the court found the testimony of Ford and Muhammad sufficient for it to determine the procedure was not suggestive. In doing so, the court considered the discrepancy in the evidence:

identification procedure was "impermissibly suggestive" (citation omitted)); *State v. Kelly*, 752 A.2d 188, 192 (Me.2000) ("Initially the defendant must prove ... the identification procedure was suggestive."); *Commonwealth v. Correia*, 381 Mass. 65, 407 N.E.2d 1216, 1225 (1980) (stating the defendant has the burden of proving the procedures were "unnecessarily suggestive"); *State v. LaRose*, 127 N.H. 146, 497 A.2d 1224, 1229 (1985) (stating the defendant has the initial burden of proving "the identification procedure was impermissibly or unnecessarily suggestive"); *State v. Norrid*, 611 N.W.2d 866, 871 (N.D.2000) ("The defendant has the burden of proving the identification procedure is impermissibly suggestive...."); *State v. Mosley*, 102 Wis.2d 636, 307 N.W.2d 200, 210 (1981) ("The first inquiry is whether the out-of-court photographic identification was impermissibly suggestive, as to which the defendant has the burden."); 22A C.J.S. *Criminal Law* § 1104 (2006) ("[T]he defendant has the initial burden to show an improper or unreliable procedure or identification...."). *C.f. People v. Jackson*, 98 N.Y.2d 555, 750 N.Y.S.2d 561, 780 N.E.2d 162, 165 (2002) ("Although the [State] ha[s] the initial burden of establishing the reasonableness of the police conduct in a pretrial identification procedure, the defendant bears the ultimate burden of proving that the procedure was unduly suggestive."). *But see Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119, 1125 (1993) (placing on the State "the burden of establishing that any identification testimony to be offered at trial is free from taint of initial illegality," though not clearly on constitutional grounds).

It does not appear, even taking into consideration the report of the investigator, that there was any corrupting effect, that there was any intentional act, that there was any deliberate act, there was any act by the police of a suggestive manner.

Notwithstanding the existence of contradictory evidence, the trial court had the responsibility to determine whether the identification procedure was suggestive. We find evidence to support the trial court's decision, and thus the court did not abuse its discretion in ruling the procedure was not impermissibly suggestive. *See Liverman*, 398 S.C. at 138, 727 S.E.2d at 425 (stating "the decision to admit an eyewitness identification is at the trial judge's discretion and will not be disturbed on appeal absent an abuse of discretion").

Because we affirm the court's ruling that the identification procedure was not impermissibly suggestive, we need not consider the trial court's determination of the second prong of *Biggers*. *See Sanders*, 708 F.3d at 984.

## III. Conclusion

The trial court's ruling is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.