806 S.E.2d 708

**The STATE, Respondent,**

**v.**

**Shawn Lee WYATT, Petitioner.**

**Appellate Case No. 2016-001303**
**Opinion No. 27743**

Supreme Court of South Carolina.

Heard June 14, 2017
Filed October 25, 2017

Appellate Defender John Harrison Strom, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General William M. Blitch Jr., both of Columbia, and Solicitor Randy E. Newman Jr., of Lancaster, for Respondent.

JUSTICE FEW:

Shawn Lee Wyatt appeals his convictions for attempting to furnish contraband to a prisoner and possession with intent to distribute cocaine, cocaine base, and marijuana. He argues the trial court erred by not suppressing two eyewitness identifications. We affirm the trial court's decision not to suppress the primary identification. We find, however, the police identification procedure was not *unnecessarily* suggestive, and thus the trial court should have addressed the suppression question only under the first prong of *Neil v. Biggers*.[1] As to the other identification, we find no error. We affirm Wyatt's convictions.

## I.   Facts and Procedural History

At approximately 5:45 a.m. on July 12, 2013, Kershaw Correctional Institute Officer Joe Schnettler was at his post in a watch tower when he observed a man run from the woods to the fence surrounding the prison. Schnettler watched the man throw eight packages over the fence, and then run back into the woods. During the incident—which lasted no more than thirty seconds—Schnettler radioed other prison officers and announced each time the man threw another package over the fence. Schnettler estimated his distance from the man to be eighty or ninety yards. After the incident, Schnettler described the suspect as a "white man" wearing "long jean shorts and a dark shirt."

---

1.   409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972).

A few minutes later, Kershaw Correctional Institute Officer Brenda Lippe was driving to work when she passed a man walking away from the prison on Highway 601.[2] When Lippe arrived at work, she heard about the incident at the fence, and told the correctional officer in charge of contraband, Corporal Christopher Hunt, she had seen a man walking away from the prison on Highway 601. She described him as "a light skinned black gentleman with a nice neat haircut, black shirt and ... charcoal-colored shorts."

The correctional officers informed the Lancaster County Sheriff's Office that there was a "black male wearing a black shirt and jean shorts" walking on Highway 601 who may have been involved with a contraband incident at the prison. At approximately 6:00 a.m., Deputy Charles Kirkley saw Wyatt walking along Highway 601. Kirkley stopped Wyatt and asked for his identification. Kirkley then informed Hunt he found the suspect.

Hunt and Schnettler left the prison and drove to the side of the road where Kirkley was holding Wyatt. Schnettler asked Kirkley to let Wyatt out of the car so he could see Wyatt standing up. After looking at him, Schnettler said, "Yeah, that's the guy I saw." When asked at trial "what about the appearance of that man enabled you to say that," Schnettler testified it was the "clothing he was wearing and how light the skin was on his legs." Schnettler stated, "The skin color of his legs looked different" because his calves were "shiny."

Kirkley put Wyatt back in the patrol car and drove to the prison so Lippe could identify him. When they arrived, Kirkley, Hunt, and Wyatt got out of the car and stood next to it. Lippe—who was in a watch tower forty or fifty yards away—positively identified Wyatt as the man she had seen walking on Highway 601 a few minutes earlier.

The contents of the packages thrown over the fence were tested and determined to be powder cocaine, cocaine base,[3] and marijuana. Based on the identifications made by Schnettler and Lippe, the State charged Wyatt with attempting to

---

**2.** Kershaw Correctional Institution is located on Highway 601.

**3.** *See* S.C. Code Ann. § 44-53-110(9) (Supp. 2016) ("Cocaine base is commonly referred to as 'rock' or 'crack cocaine.' ").

furnish contraband to a prisoner, possession with intent to distribute cocaine, possession with intent to distribute cocaine base, and possession with intent to distribute marijuana.

Prior to trial, Wyatt moved to suppress the identifications. The State argued against suppression under both prongs of *Biggers*. However, the trial court analyzed only the second prong, and found the "procedures used in this arrest did not create a substantial likelihood of irreparable misidentification." The court denied Wyatt's motion to suppress. The jury convicted Wyatt of all charges, and the trial court sentenced him to ten years in prison. The court of appeals affirmed Wyatt's conviction in an unpublished opinion. *State v. Wyatt*, Op. No. 2016-UP-162, 2016 WL 1366982 (S.C. Ct. App. filed Apr. 6, 2016). We granted Wyatt's petition for a writ of certiorari.

## II. Identification Evidence

When a defendant challenges the admissibility of a witness's identification, trial courts employ a two-pronged inquiry to determine whether due process requires suppression. *Biggers*, 409 U.S. at 198-200, 93 S.Ct. at 381-82, 34 L.Ed. 2d at 410-11; *State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 426 (2012). First, the court must determine whether the identification resulted from "unnecessarily suggestive" police identification procedures. *Biggers*, 409 U.S. at 198-99, 93 S.Ct. at 381-82, 34 L.Ed. 2d at 410-11; *Liverman*, 398 S.C. at 138, 727 S.E.2d at 426. The Supreme Court of the United States has repeatedly emphasized "that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39, 132 S.Ct. 716, 724, 181 L.Ed. 2d 694, 707 (2012) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109, 97 S.Ct. 2243, 2249, 2250, 53 L.Ed. 2d 140, 149, 151 (1977), and *Biggers*, 409 U.S. at 198, 93 S.Ct. at 382, 34 L.Ed. 2d at 411); *see also Liverman*, 398 S.C. at 138, 727 S.E.2d at 426 (describing the trial court's task under the first prong as determining "whether the identification resulted from unnecessary and unduly suggestive police procedures"). If the court finds the police procedures were not suggestive, or that suggestive procedures were necessary under the circumstances, the inquiry ends there and the court need not consider the second prong. *See United States v. Sanders*, 708 F.3d 976, 984

(7th Cir. 2013) (citing *Perry* for the proposition that "courts will only consider the second prong if a challenged procedure does not pass muster under the first"); *State v. Dukes*, 404 S.C. 553, 557-58, 745 S.E.2d 137, 139 (Ct. App. 2013) (same).

■ If, however, the court determines the procedures were both suggestive and unnecessary, the court must then determine "whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed." *Liverman*, 398 S.C. at 138, 727 S.E.2d at 426 (citing *Biggers*, 409 U.S. at 198-99, 93 S.Ct. at 382, 34 L.Ed. 2d at 411).

As the Supreme Court stated in *Perry*, "Only when [the] evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' have we imposed a constraint [on admissibility] tied to the Due Process Clause." 565 U.S. at 237, 132 S.Ct. at 723, 181 L.Ed. 2d at 706 (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed. 2d 708, 720 (1990)).

Wyatt argues the trial court erred by not suppressing Schnettler's and Lippe's identifications because the procedures used were unnecessarily suggestive and created a substantial likelihood of misidentification. We address each identification separately.

## A. Schnettler's Identification

Schnettler's identification of Wyatt occurred during a single person showup procedure, which is where police present a single suspect to an eyewitness for possible identification. The showup procedure here took place near the prison property approximately fifteen minutes after the crime was committed.

### 1. Suggestiveness

■ Wyatt argues the State conceded the first prong of *Biggers* during the suppression hearing. The State counters that it conceded single person showup procedures are suggestive, but never conceded the procedure was unnecessary under the circumstances. During his argument against Wyatt's motion to suppress, the solicitor stated, "Your Honor, I concede that the showup procedure is suggestive, I think it's inherently

suggestive, that doesn't mean that it's automatically a cause for suppression." The solicitor continued,

> I think one thing you have to think about in this case is these are not civilian witnesses who are called upon to identify somebody who might be a suspect in the crime. These are trained law enforcement officers who as Officer Schnettler said are taught, number one, to observe and record information mentally and then to report the information so that correct procedures can be undertaken to resolve the situation that has occurred.

We read the State's concession that the procedures were "inherently suggestive" not to concede its position under the first prong of *Biggers*, but rather to frame its argument on the question of necessity. The ensuing argument that the witnesses were "trained law enforcement officers" who have a duty "to report the information so that *correct procedures* can be undertaken *to resolve the situation* that has occurred" is an argument about the necessity of the procedures. Therefore, although the State conceded the police procedures were suggestive—and we agree—the analysis under the first prong is not complete without considering the necessity of the procedures.

## 2. Necessity

In *Perry*, the Supreme Court illustrated the necessity requirement by discussing *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967). The *Perry* Court explained that in *Stovall* the police performed a showup procedure by bringing the defendant to the witness's hospital room. 565 U.S. at 237-38, 132 S.Ct. at 724, 181 L.Ed. 2d at 706. "The witness was the only person who could identify or exonerate the defendant; the witness could not leave her hospital room; and it was uncertain whether she would live to identify the defendant in more neutral circumstances." 565 U.S. at 238, 132 S.Ct. at 724, 181 L.Ed. 2d at 706. The *Perry* Court explained its analysis from *Stovall*, "Although the police-arranged showup was undeniably suggestive, the Court held that no due process violation occurred. Crucial to the Court's decision was the procedure's necessity...." *Id.*[4]

---

4. Other courts have denied suppression under the first prong of *Biggers* because the circumstances of the case rendered suggestive police proce-

In *Gibbs v. State*, 403 S.C. 484, 744 S.E.2d 170 (2013), we explained other situations in which the circumstances may make suggestive police identification procedures necessary:

> where it occurs shortly after the alleged crime, near the scene of the crime, as the witness' memory is still fresh, and the suspect has not had time to alter his looks or dispose of evidence, and the showup may expedite the release of innocent suspects, and enable the police to determine whether to continue searching.

403 S.C. at 494, 744 S.E.2d at 175 (quoting *State v. Mansfield*, 343 S.C. 66, 78, 538 S.E.2d 257, 263 (Ct. App. 2000)).

We find the showup procedure used for Schnettler's identification was necessary under the circumstances. First, Kirkley found Wyatt walking on Highway 601 near the prison approximately fifteen minutes after Schnettler had seen someone throw contraband over the fence. The black shirt and dark jean shorts Wyatt was wearing matched the description Kirkley received from the correctional officers. Because Schnettler had not been able to observe the suspect's facial features, but rather had described him primarily in terms of the clothes he was wearing that left his distinctive calves exposed, the best opportunity for Schnettler to say whether the suspect was the man he saw was right then, before the suspect could change his appearance. By conducting the showup procedure immediately, Kirkley was able to quickly determine whether Wyatt was the person who threw the contraband into the prison, or whether Wyatt should be released because he was innocent and the sheriff's office needed to continue its search before

---

dures necessary. *See, e.g., United States v. Hawkins*, 499 F.3d 703, 707-08 (7th Cir. 2007) (finding "the showup, while suggestive, was [not] unduly so" because "there was a good reason for the failure to resort to a less suggestive alternative"); *State v. Addai*, 778 N.W.2d 555, 565 (N.D. 2010) ("The 'unnecessarily or impermissibly suggestive' prong is separated into two inquiries: '(1) whether the identification is suggestive, and (2) whether there is a good reason for not using a less suggestive procedure.' "); 778 N.W.2d at 566 ("Showup identifications conducted close in time and proximity to the crime may be necessary to ensure the correct person has been apprehended, the perpetrator is not still at large, and an innocent person is not being held."); *see also State v. Dubose*, 285 Wis.2d 143, 699 N.W.2d 582, 593-94 (2005) (following *Stovall* and holding "an out-of-court showup is inherently suggestive and will not be admissible unless, based on the totality of the circumstances, the procedure was necessary").

other suspects could leave the area. *See Hawkins*, 499 F.3d at 707-08 (discussing showup identifications conducted "close in time and proximity to the scene of a crime" and stating "[s]uch identifications both protect innocent individuals from unnecessary arrest and help authorities determine whether they must continue to search for the actual perpetrator"); *United States v. Martinez*, 462 F.3d 903, 910 (8th Cir. 2006) ("Police officers need not limit themselves to station house line-ups when an opportunity for a quick, on-the-scene identification arises. Such identifications are essential to free innocent suspects and to inform the police if further investigation is necessary.").

Second, the vague description the correctional officers gave Kirkley of a "black male wearing a black shirt and jean shorts"—without Schnettler's identification—raises serious questions as to whether Kirkley had probable cause to arrest Wyatt. *See State v. Baccus*, 367 S.C. 41, 49, 625 S.E.2d 216, 220 (2006) ("Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested."). While Kirkley had reasonable suspicion to briefly detain Wyatt based on Wyatt's close proximity to the prison and the descriptions from Schnettler and Lippe, we doubt this was sufficient to establish probable cause. At oral argument, a justice of the Court asked Wyatt's counsel, "If Deputy Kirkley had picked up Wyatt on the side of the road with the two descriptions he had from Schnettler and Lippe ... but did not conduct the showup ... would he have had probable cause to make an arrest." Counsel answered, "Probable cause—likely not at the time he stopped him. . . ." *See Dubose*, 699 N.W.2d at 594 (stating "[a] showup [is] necessary ... [if] the police lacked probable cause to make an arrest" without it).

Finally, we question whether there were other procedures Kirkley could have used that would have been less suggestive. The characteristics Schnettler described observing in the suspect were not features that could have been presented in a typical photographic lineup. Schnettler testified he was unable to observe the typical attributes used to make identifications in lineups—things like hairstyle, hair color, and facial features. "I was not looking at facial features," he stated, "I was looking at what he was doing, so I can't do facial features." Instead,

Schnettler focused his observation on attributes he could observe from eighty or ninety yards away—the "clothing he was wearing and how light the skin was on his legs." Under these circumstances, a photograph lineup would require police to present Schnettler with photographs of other people with similar characteristics as Wyatt—wearing black shirts, jean shorts, with their calves visible. Such a lineup would be unworkable.

■ "[W]hat triggers due process concerns is police use of an unnecessarily suggestive identification procedure...." *Perry*, 565 U.S. at 232 n.1, 132 S.Ct. at 721 n.1, 181 L.Ed. 2d at 703 n.1. The procedure used for Schnettler's identification was suggestive, but the suggestive procedure was necessary under the circumstances of this case. Under the first prong of *Biggers*, therefore, the trial court correctly denied the motion to suppress.

## B. Lippe's Identification

We begin our review of the trial court's analysis as to Lippe by observing that her identification was of little consequence to the outcome of the trial. She did not witness the crime, and her testimony proved only a fact already established conclusively: that Wyatt was walking away from the prison on Highway 601 just before 6:00 a.m. *See Liverman*, 398 S.C. at 141, 727 S.E.2d at 427 (discussing factors to be considered when deciding if an error was harmless, including "the importance of the witness' testimony in the prosecution's case" and "whether the testimony was cumulative"). In addition, there is evidence in the record to support the trial court's finding that "no substantial likelihood of misidentification existed" under the second prong of *Biggers*. *See* 398 S.C. at 138, 727 S.E.2d at 426 (listing five factors a court should consider in determining the reliability of an identification under the second prong: (1) "the witness's opportunity to view the perpetrator at the time of the crime," (2) "the witness's degree of attention," (3) "the accuracy of the witness's prior description of the perpetrator," (4) "the level of certainty demonstrated by the witness at the confrontation," and (5) "the length of time between the crime and the confrontation").

### III. Conclusion

The trial court was correct not to suppress Schnettler's identification. However, the court should have considered the necessity of the police procedures under the first prong of *Biggers* instead of going straight to the second prong. We find the procedure used for Schnettler's identification was necessary under the first prong.

We affirm the decision not to suppress Lippe's identification. Wyatt's convictions are **AFFIRMED.**

BEATTY, C.J., KITTREDGE and JAMES, JJ., concur. HEARN, J., concurring in a separate opinion.

JUSTICE HEARN:

I concur in the result reached by the majority; however, I write separately because I believe certiorari was improvidently granted. From my reading of the solicitor's colloquy with the trial judge, the State acknowledged the procedure was inherently suggestive and then moved immediately to discuss the second prong of *Biggers*. Therefore, I believe the trial judge properly understood the State to have conceded the procedure was unnecessarily suggestive and couched her ruling in terms of whether a substantial likelihood of irreparable misidentification existed. Thus, I would dismiss the writ of certiorari as improvidently granted.