# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

James Clyde Dill Jr., Petitioner.

Appellate Case No. 2016-000654

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Laurens County
Eugene C. Griffith Jr., Circuit Court Judge

---

Opinion No. 27816
Heard December 13, 2017 – Filed June 20, 2018

---

### REVERSED

---

Appellate Defender Taylor Davis Gilliam, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, all for Respondent.

---

**JUSTICE JAMES:** James Clyde Dill Jr. was convicted of manufacturing methamphetamine, and the trial court sentenced him to a prison term of ten years. Dill appealed his conviction, and the court of appeals affirmed. *State v. Dill*, Op.

No. 2016-UP-010 (S.C. Ct. App. filed Jan. 13, 2016). This Court granted Dill's petition for a writ of certiorari. We reverse Dill's conviction.

## FACTUAL AND PROCEDURAL HISTORY

Laurens County Sheriff's Sergeant Justin Moody requested a local magistrate to issue a search warrant for Dill's residence. In pertinent part, Sergeant Moody's affidavit stated:

> Laurens County Sheriff's Office has received information in the last 72 hours that at the above listed location an active methamphetamine lab is in operation. A confidential informant working in an undercover capacity with the Laurens County Sheriff's Office was at this location and did see numerous items that are used in the manufacturing of methamphetamine.

The affidavit also included the following items as the property sought to be recovered from the residence:

> Any and all items of evidentiary value to include but not limited to ephedrine based medications, lithium strips and any and all parts of lithium batteries, bottles, tubing, hydrogen peroxide, salt, cold packs and contents of such, toluene, liquid drain cleaner, and any currency, firearms, surveillance equipment electronic and otherwise, and any and all other items that could be used in the illegal manufacturing, distribution, or cultivation of illegal narcotics.

Sergeant Moody testified at the pretrial suppression hearing before the trial court that he supplemented his affidavit with oral testimony to the magistrate, specifically that the individual who provided information to him was reliable and had been used in two prior cases in which arrests had been made. The magistrate issued the search warrant.

Laurens County Sheriff's deputies searched Dill's residence. Including Dill, five or six individuals were inside the residence at the time of the search. Neither an active methamphetamine lab nor methamphetamine was discovered in Dill's residence. Law enforcement seized five one-pound containers of salt (some full and some partially empty), two bottles of Coleman brand camping fuel, a sixteen-ounce

bottle of hydrogen peroxide, a bottle of unknown fluid, and a roll of aluminum foil.[1] Law enforcement did not discover any ephedrine-based medications (or empty blister packs of ephedrine-based medications), lithium strips or batteries, drain cleaners, cold packs, sulfuric acid, or toluene, all of which are commonly used in the manufacture of methamphetamine. Law enforcement located an empty plastic bottle near the back door of the residence. As noted below, a State's witness characterized the empty bottle as a hydrochloric acid (HCL) generator. At the conclusion of the search, law enforcement placed the seized items in buckets, took four photographs, and immediately destroyed the items without testing for methamphetamine or fingerprints. The items were destroyed without being tested because methamphetamine is highly volatile and may present a danger if placed in storage or tested for methamphetamine. Dill was arrested and indicted for manufacturing methamphetamine.

Dill moved pretrial to suppress the evidence found during the execution of the search warrant for lack of probable cause or, in the alternative, for the trial court to require the State to reveal the identity of the confidential informant. Dill questioned the sufficiency of the search warrant affidavit and the legality of the search warrant itself. He claimed there was a facial inconsistency in the search warrant affidavit, which first stated there was an "active methamphetamine lab" at the residence but then concluded with a more ambiguous statement that there were only "numerous items" present on the premises that could be used in the manufacture of methamphetamine. Dill noted, "As far as the position that I have in arguing that the warrant should not have been issued based upon the veracity of information provided by the affiant, I am hampered to the point of almost being unable to make an argument . . . ." Dill explained:

> The [m]agistrate whose job is to issue these warrants needs to be provided certain information. If the standard has reached the point where we reached a level of information provided by the statement saying, "Hi, I have a badge, somebody, and I'm not going to tell you who told me something and I'm not going to tell you what but take my

---

[1] Law enforcement also discovered a "fairly large number" of hypodermic needles. The trial court concluded the needles were drug paraphernalia and thus irrelevant to the manufacturing charge; therefore, the trial court excluded the term "paraphernalia" from its jury charge on the law regarding the manufacture of methamphetamine. Dill did not request the trial court to instruct the jury to disregard the presence of the hypodermic needles.

word for it, this stuff is there." If that is the standard then we really don't need the Magistrates to sign off on that, if that is all it takes.

Dill acknowledged the importance of protecting the identity of confidential informants but argued it was unnecessary in this situation since it had been over a year since the incident occurred.

In response to Dill's argument that the State should be required to divulge the informant's identity, the State argued to the trial court that the person who provided law enforcement the information was not a "confidential informant" working undercover for the Sheriff's Office, but was a "mere tipster" whose identity was not required to be revealed.[2] The State noted, "[A]lthough the affidavit says this is a confidential informant working with the Laurens County Sheriff's Office, we are not disputing that they, that this person worked with the Sheriff's Office. But . . . they weren't working with the Sheriff's Office with regards to this actual incident." The trial court questioned this characterization:

Isn't that kind of self-serving? You put an undercover informant and say, I want you to try to set up Detective Revis over here. And then every case he makes is, he was just working while these other half of a dozen would get a special privilege because he was just working on that one case. The other twelve was not. That is not exactly why we hired him. But we made the other twelve cases and he just accidentally stumbled on those. I mean, isn't that kind of self-serving. . . . You can't create a situation and use it as a shield.

Sergeant Moody testified at the pretrial suppression hearing that he received information "from an individual of a *possible* manufacturing of methamphetamine at [Dill's] residence." (emphasis added). In his warrant affidavit, Sergeant Moody did not attribute this information to the informant who told him he saw numerous items at the residence that are used in the manufacture of methamphetamine. Sergeant Moody testified he supplemented his affidavit with oral testimony to the magistrate that the individual who provided information to him was reliable and had

---

[2] *See State v. Humphries*, 354 S.C. 87, 90, 579 S.E.2d 613, 615 (2003) (providing "an informant's identity need not be disclosed where he possesses only a peripheral knowledge of the crime or is a mere 'tipster' who supplies a lead to law enforcement").

been used in two other cases where arrests had been made. Sergeant Moody did not supplement his affidavit with any other oral testimony to the magistrate.

Dill contended there was no way for him to question or defend against the accusation without knowing the identity of the confidential informant. Again characterizing the informant as a mere tipster, the State responded, "[T]he fact that a confidential informant, the term being used in the search warrant is irrelevant because it is not being used as a term of art in law that this was an active participant. But rather this was just someone supplying information."

Dill argued that Sergeant Moody characterized the informant in his affidavit as a "confidential informant working in an undercover capacity" in order to enhance the informant's standing and credibility before the magistrate. He argued a sergeant in the narcotics division would surely know the legal distinction between a mere tipster and a confidential informant working undercover for law enforcement. Dill questioned whether the warrant would have been issued if the affidavit and supporting oral testimony had conceded that the person who provided the tip to law enforcement was a mere tipster, as opposed to a confidential informant working undercover. The trial court ruled the information was provided to Sergeant Moody by a "mere tipster" whose identity need not be revealed and denied Dill's motion to suppress the evidence seized.

Sergeant Moody did not testify before the jury. The State's primary trial witness was Lieutenant Jimmy Sharpton, a "meth tech" for the Sheriff's Office. He explained his duties included identifying methamphetamine ingredients and paraphernalia, disassembling active labs, and preparing seized items for disposal. Lieutenant Sharpton testified he received specialized training and certification regarding the recognition, investigation, and disposal of methamphetamine labs. The trial court qualified him as an expert in the field of "methamphetamine lab identification and cleanup."

Lieutenant Sharpton testified he assisted in executing the search warrant and seizing the materials found at Dill's residence. He confirmed law enforcement seized the aforementioned table salt, Coleman lantern fuel, bottle of hydrogen peroxide, and roll of aluminum foil. Lieutenant Sharpton explained the role of each of these items in the manufacture of methamphetamine.

Lieutenant Sharpton also testified he discovered what he considered to be an HCL generator outside the back door of the residence. He explained an HCL generator is a tool used during the last step of making methamphetamine and is commonly constructed using a plastic bottle with a hole cut for a tube to vent the

HCL gas. The record includes a photograph of what Lieutenant Sharpton described as "what is left of the generator," specifically an empty plastic bottle with no cap and what Lieutenant Sharpton testified is a tube running out the side or top of the bottle. When asked to explain the significance of the presence of the seized items and an HCL generator, Lieutenant Sharpton replied, "[S]omeone had been manufacturing meth at that location."

Lieutenant Sharpton testified he placed the seized items in five-gallon buckets, in which the items were transported from Dill's residence. He highlighted the dangers present in methamphetamine labs and the disposal process and testified all the items seized from Dill's residence were destroyed for safety reasons. He explained these items were not tested for methamphetamine residue and were not fingerprinted due to the hazardous nature of methamphetamine. Lieutenant Sharpton testified that the fact that every ingredient used to make methamphetamine was not present at the residence did not mean methamphetamine had not been made earlier on the property. He noted many experienced methamphetamine "cooks" rapidly dispose of certain items.

At the conclusion of the State's case, the trial court denied Dill's motion for a directed verdict. Dill did not present any evidence. The jury convicted Dill of manufacturing methamphetamine, and the trial court sentenced him to a prison term of ten years. Dill appealed, and the court of appeals affirmed in an unpublished opinion. *State v. Dill*, Op. No. 2016-UP-010 (S.C. Ct. App. filed Jan. 13, 2016). This Court granted Dill's petition for a writ of certiorari. Dill argues the court of appeals erred in affirming the trial court's (1) conclusion the magistrate properly determined probable cause existed to issue a search warrant; (2) refusal to find the search warrant invalid because the magistrate was misled by false information; (3) refusal to require the State to reveal the identity of a confidential informant; and (4) denial of his motion for directed verdict. Our analysis of the first issue is dispositive of this appeal.

## DISCUSSION

### Search Warrant: Probable Cause

Dill argues the court of appeals erred in affirming the trial court's refusal to suppress evidence found during the execution of the search warrant. He contends the search warrant affidavit and supplemental oral testimony were insufficient for the magistrate to establish a substantial basis for probable cause. We agree.

"The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Evidence seized in violation of the Fourth Amendment must be excluded from trial." *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002). A search or seizure is reasonable under the Fourth Amendment when it is authorized by a warrant that is supported by probable cause. *State v. Kinloch*, 410 S.C. 612, 616, 767 S.E.2d 153, 155 (2014).

In South Carolina, search warrants shall be issued "only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant." S.C. Code Ann. § 17-13-140 (2014). Probable cause determinations are evaluated under a totality-of-the-circumstances test in which:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[A] warrant based solely on information provided by a confidential informant must contain information supporting the credibility of the informant and the basis of his knowledge. However, independent verification by law enforcement officers cures any defect." *State v. 192 Coin-Operated Video Game Machs.*, 338 S.C. 176, 192, 525 S.E.2d 872, 881 (2000). "Mere conclusory statements which give the magistrate no basis to make a judgment regarding probable cause are insufficient." *State v. Smith*, 301 S.C. 371, 373, 392 S.E.2d 182, 183 (1990). Sworn oral testimony is permissible to supplement search warrant affidavits which are facially insufficient to establish probable cause. *See State v. Weston*, 329 S.C. 287, 292, 494 S.E.2d 801, 803 (1997).

"A reviewing court should give great deference to a magistrate's determination of probable cause." *Id.* at 290, 494 S.E.2d at 802. "The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed." *State v. Baccus*, 367 S.C. 41, 50, 625 S.E.2d 216, 221 (2006).

Dill challenges the veracity of the statements included in the search warrant affidavit. However, without questioning the veracity of those statements, we find Sergeant Moody's affidavit and oral testimony before the magistrate were insufficient for the magistrate to conclude there was a fair probability that evidence

of Dill's manufacturing of methamphetamine would be found at his residence. The affidavit, as written, conveys only that the informant informed law enforcement he saw "numerous items that are used in the manufacture of methamphetamine." The affidavit does not relate what those items were, nor does the affidavit relate what was being done with the items. It simply relates there were unnamed items that can be used in the manufacture of methamphetamine. Also, the affidavit, as written, supplies no information supporting the initial mere conclusory assertion that there was "an active methamphetamine lab . . . in operation." In particular, the affidavit does not relate who gave Moody this crucial information. Sergeant Moody's oral testimony to the magistrate did not provide any information as to the source of the information that an active lab was in operation; therefore, there was nothing presented to the magistrate to support a finding of probable cause that there was an active lab in operation.[3]

---

[3] Our review of whether Sergeant Moody's affidavit and oral testimony established probable cause is limited to the information he provided to the magistrate in those two settings. However, we must note that our conclusion that Sergeant Moody's affidavit and oral testimony fell short of establishing probable cause is borne out by his testimony at the pretrial suppression hearing. Sergeant Moody testified he learned "from an individual of a possible manufacturing of methamphetamine at [Dill's] residence." During the suppression hearing, Sergeant Moody related for the first time that this information came from the same informant who gave him the information about the unnamed methamphetamine ingredients being in Dill's residence. This information is of interest for two reasons. First, Sergeant Moody did not relate in either his affidavit or his oral testimony to the magistrate that the information about an active lab came from the same informant who provided the information concerning the presence of items that could be used in the manufacture of methamphetamine. Second, during the pretrial suppression hearing, Sergeant Moody referenced this information—arguably the backbone of the State's case—in terms of an individual telling him of the "possible" manufacturing of methamphetamine at Dill's residence. This uncorroborated information couched in terms of a "possibility" would not have provided the magistrate with "a substantial basis upon which to conclude that probable cause existed." *See Baccus*, 367 S.C. at 50, 625 S.E.2d at 221.

As to the informant's credibility, Sergeant Moody's affidavit noted the confidential informant was working in an undercover capacity with the Laurens County Sheriff's Office. Sergeant Moody's oral testimony before the magistrate that the informant was reliable and had been used twice before further bolstered the informant's credibility. *See Weston*, 329 S.C. at 292, 494 S.E.2d at 803 (providing sworn oral testimony may be used to supplement search warrant affidavits). Arguably, this information would give the magistrate sufficient basis to conclude that information attributed to the informant was likely true. However, that does not end our inquiry. We must look specifically at the information in the affidavit that was attributed to the informant. Applying a common sense reading to the affidavit, the initial conclusory statement that an active methamphetamine lab was present at Dill's residence was not attributed to the informant, and law enforcement did not obtain independent verification of this particular information through surveillance or otherwise. *See Smith*, 301 S.C. at 373, 392 S.E.2d at 183 ("Mere conclusory statements which give the magistrate no basis to make a judgment regarding probable cause are insufficient."); *Weston*, 329 S.C. at 291, 494 S.E.2d at 803 (providing a search warrant affidavit could not have provided a substantial basis for finding probable cause to search the defendant's car because the affidavit failed to set forth any facts as to why law enforcement believed the defendant committed the crime and the first three sentences of the affidavit contained mere conclusory statements). Sergeant Moody's affidavit and oral testimony supported only a finding by the magistrate that "numerous [but unnamed] items that are used in the manufacturing of methamphetamine" were in Dill's residence. Many ingredients used in the manufacturing of methamphetamine, according to Lieutenant Sharpton, are common household items.

We must give "great deference" to a magistrate's finding of probable cause. *See Weston*, 329 S.C. at 290, 494 S.E.2d at 802. However, given the totality of the circumstances, we find the magistrate lacked a substantial basis for concluding probable cause existed for a search of Dill's residence. *See Baccus*, 367 S.C. at 50, 625 S.E.2d at 221 ("The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed."). Under the narrow facts of this case, the search warrant was therefore invalid.

## CONCLUSION

Since the search warrant was invalid, the trial court erred in admitting the evidence obtained during the search of Dill's residence. *See Baccus*, 367 S.C. at 52, 625 S.E.2d at 222 (providing the suppression of evidence to be an appropriate remedy when evidence is seized pursuant to an invalid search warrant). This

evidence formed the sole basis for Dill's conviction.  We therefore **REVERSE** the court of appeals and **REVERSE** Dill's conviction.[4]

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**

---

[4] Because this issue is dispositive of the appeal, we decline to address Dill's remaining arguments.  *See State v. Allen*, 370 S.C. 88, 102, 634 S.E.2d 653, 660 (2006) (declining to address an appellant's remaining issues when disposition of a prior issue is dispositive of the appeal).