# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Daquan Javor Crummey, Appellant.

Appellate Case No. 2020-000537

———————

Appeal From Charleston County
R. Kirk Griffin, Circuit Court Judge

———————

Opinion No. 6059
Heard April 4, 2023 – Filed May 8, 2024

———————

## AFFIRMED

———————

Appellate Defender David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia, and Solicitor Scarlett Anne Wilson, of
Charleston, all for Respondent.

———————

**MCDONALD, J.:**  Daquan J. Crummey appeals his convictions for first-degree
burglary, armed robbery, assault and battery, and possession of a weapon during
the commission of a violent crime, arguing the circuit court erred in admitting into
evidence a photographic identification, two Facebook screenshots, and a recorded
jail call.  Crummey also challenges the validity of the warrant authorizing the
search of his iPhone.  We affirm.

**Facts and Procedural History**

On July 23, 2017, several people gathered at Alberto Garcia's trailer in North Charleston to share a meal. Dulce Martinez-Garcia, then sixteen years old, was watching from a kitchen window for her ride when she saw two young men walking across the street. She then heard a knock at the door and got up to answer, believing it to be her ride. Instead, she found the two men at the door. They forced their way inside the home and "took their weapons out of their pants."

While pointing their weapons at Alberto and his guests, the men demanded money and ordered everyone to get on their knees and face the wall. Dulce translated their demands for the group. The taller of the two men struck Alberto near his right eye with the gun and hit him in the face again after Alberto pulled a wallet from his shirt pocket. As the guests gathered their cash and cell phones, the assailants demanded more money and ransacked the home. Dulce testified, "The taller young man took me by the hair and hit me in the right side of my head." At some point during the robbery, a neighbor opened the door to the trailer, saw what was happening, and fled.

Once the men left, Dulce called the police. Law enforcement arrived to find several people waiting outside the trailer. Deputy Nicholas Vecchione of the Charleston County Sheriff's Office (CCSO) described the scene as chaotic and crowded, noting most of the people at the scene did not speak English. Dulce and another bilingual person helped translate.

EMS transported Dulce and Alberto to a hospital for evaluation and treatment; CCSO Detective Zulifqar Khan first interviewed Dulce there. Dulce told Detective Kahn that she recognized the taller assailant because she had seen him standing in front of the auto shop where her father worked. She recognized the other man from school, but she did not know either of the men's names. Detective Khan later met Dulce at her high school to review yearbooks in an effort to identify the intruders. Although Dulce initially considered someone from the school yearbook as a possible suspect, she realized that young man merely had similar features but was not one of the men from the robbery.

A few days later, Dulce was on Facebook when she saw an image of the taller assailant on her timeline. Dulce did not know how she had connected with this person on Facebook, but later noted, "It was probably me because I was the one always adding, honestly, whoever was coming to my page." Dulce began looking through the photographs associated with the account and saw the shorter assailant,

Denali White, in a photo that was later introduced at trial as State's Exhibit 85. She then contacted Detective Khan and told him she found the men on Facebook in photos posted to the account of "Runacheckup Youngn." Detective Kahn recognized Crummey as the taller man associated with the Runacheckup Youngn account. Later in the investigation, Detective Khan learned Crummey had been involved in a traffic stop with White just a few days after the robbery.

Dulce subsequently identified Crummey and White from their respective photographic lineups, and both had cell phones with them when arrested. Detective Khan obtained search warrants for the phones, which revealed text messages between Crummey and White discussing hitting a "lick" on the morning of the robbery.

Crummey and White were jointly tried in March 2020. Crummey was convicted of first-degree burglary, two counts of first-degree assault and battery, possession of a weapon during the commission of a violent crime, and four of the five armed robbery counts. He was acquitted of a fifth armed robbery charge.[1] The circuit court sentenced Crummey concurrently to fifteen years on the burglary, fifteen years for each armed robbery conviction, ten years for each assault and battery, and five years on the weapon charge.

**Standard of Review**

"In criminal cases, appellate courts sit to review errors of law only." *State v. Robinson*, 426 S.C. 579, 591, 828 S.E.2d 203, 209 (2019). "As to evidentiary issues, 'we are limited to determining whether the trial judge abused his discretion.'" *State v. Hawes*, 423 S.C. 118, 126, 813 S.E.2d 513, 517 (Ct. App. 2018) (quoting *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001)). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012) (quoting *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011)).

**Analysis**

**I. Photographic Lineup**

---

[1] Crummey was also indicted on five counts of kidnapping, but the State did not pursue these charges at trial.

Crummey challenges the circuit court's admission of Dulce's photographic lineup identification, arguing it was cumulative, suggestive, not probative, and unreliable. Crummey contends admission of this evidence was improper because Dulce had already identified him through Facebook as the taller assailant. We disagree.

"When a defendant challenges the admissibility of a witness's identification, trial courts employ a two-pronged inquiry to determine whether due process requires suppression." *State v. Wyatt*, 421 S.C. 306, 310, 806 S.E.2d 708, 710 (2017). "First, the court must determine whether the identification resulted from 'unnecessarily suggestive' police identification procedures." *Id.* "If . . . the court determines the procedures were both suggestive and unnecessary, the court must then determine 'whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.'" *Id.* (quoting *State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 426 (2012)). "If the court finds the police procedures were not suggestive, or that suggestive procedures were necessary under the circumstances, the inquiry ends there and the court need not consider the second prong." *Id.*

Pretrial, the circuit court held a *Neil v. Biggers*[2] hearing to determine the admissibility of Dulce's identification of Crummey from the photo array. Dulce recalled that one of the men was taller than the other, and she thought she recognized one from her school and the other as someone she had seen in front of the auto shop where her father worked. Dulce was able to observe both men during the robbery because she had to translate their demands for the other victims. She testified that "the tall guy had all black clothes on and . . . had a hat on turned backwards. And the shorter guy had a grey tee-shirt and black pants." Although Dulce admitted she was initially unable to identify either of the men when she met with Detective Khan to review yearbooks, she explained she recognized the taller man a few days later when an image from his livestream appeared on her Facebook timeline. Dulce went to the account, "Runacheckup Youngn," and reviewed the posted photographs. When she came across a photo of the two suspects together, Dulce took screenshots and "texted Detective Kahn right away."

Dulce went to the CCSO a few days later to review photo arrays and identified Crummey as the "main one from the robbery." Although Dulce wrote on the identification form that she recognized Crummey "because I've seen him before at school and he also used to be in front of my dad's work," she admitted during the

---

[2] 409 U.S. 188 (1972).

*Biggers* hearing that this was a mistake. Dulce confirmed she recognized White from school and Crummey from the auto shop where her father worked.

Crummey argued Dulce's identification should be excluded because it differed from a typical photo array identification in that Dulce already "had someone in mind" due to the Facebook information she found on her own. The circuit court disagreed, finding the lineup procedure was not unduly suggestive and Dulce—the victim who had the most contact with the men during the home invasion robbery—identified Crummey and White with certainty.

We are not persuaded by Crummey's argument that the lineup was unnecessary, unreliable, and cumulative because Dulce had already identified him from Facebook. *Cf. Upson v. State*, 442 S.C. 359, 366, 897 S.E.2d 564, 568 (Ct. App. 2024), *reh'g denied* (Mar. 1, 2024) ("[A] witness's independent identification process in which the state is not involved cannot be said to be unduly suggestive."). The lineup exhibit was relevant to establish Dulce could identify the taller assailant, and it allowed her to explain that while she initially considered another individual from her yearbook as a potential suspect, she eliminated him and was confident in her recognition of Crummey. Moreover, Crummey's lineup array was not in any way suggestive—it contained six photos of black males with similar hairstyles and features. *See, e.g., State v. Simmons*, 384 S.C. 145, 168, 682 S.E.2d 19, 31 (Ct. App. 2009) (finding photo lineup admissible despite defendant's contention that his ears were smaller than those of others in the lineup). Nothing in the lineup itself or the conducting officer's behavior suggested Crummey was the target of the investigation. Because Dulce's photographic identification of Crummey was highly probative and not cumulative or unreliable, the circuit court properly exercised its discretion in admitting it.

## II. Admission of Facebook Photographs

Crummey next argues the circuit court erred in admitting into evidence two Facebook screenshots (State's Exhibits 84 and 85) showing Crummey and White holding money and smoking. He contends the photos were unduly prejudicial due to the amount of cash shown and because the jury may have wrongly assumed it was the cash stolen during the dinner party robbery. Crummey further asserts the photographs had little probative value in that they were cumulative to other evidence. We disagree.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina,

statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina.  Evidence which is not relevant is not admissible."  Rule 402, SCRE.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, SCRE.  "Evidence is relevant and admissible if it tends to establish or make more or less probable the matter in controversy."  *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009).  "[A] court analyzing probative value considers the importance of the evidence and the significance of the issues to which the evidence relates."  *State v. Gray*, 408 S.C. 601, 610, 759 S.E.2d 160, 165 (Ct. App. 2014).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, SCRE.  "In criminal cases, the term 'unfair prejudice' 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'"  *Johnson v. State*, 433 S.C. 550, 558–59, 860 S.E.2d 696, 701 (Ct. App. 2021) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).  Stated differently, "[u]nfair prejudice means an undue tendency to suggest decision on an improper basis."  *Wiles*, 383 S.C. at 158, 679 S.E.2d at 176.  "All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided."  *State v. Bratschi*, 413 S.C. 97, 115, 775 S.E.2d 39, 49 (Ct. App. 2015) (quoting *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998)).

Crummey contends the photographs had little probative value for identification purposes because Dulce was going to testify and another Facebook photo was already in evidence.  He noted the jury might assume Crummey was smoking a marijuana cigarette, as opposed to a Black and Mild cigar, and infer "these are bad guys, look at them making bad signs and using drugs."  In response to Crummey's assertion that State's Exhibit 85 was prejudicial because it showed him making a gang sign, the circuit court ordered that his hands be redacted.  The circuit court also cautioned the State not to refer to alleged gang signs or marijuana use.

We find the circuit court did not abuse its discretion in admitting the Facebook photos.  State's Exhibit 84 shows Crummey and White posing for the camera; White is holding a stack of money up to his ear like a phone, and additional cash is fanned out for display.  The lower part of the photo has been redacted.  State's Exhibit 85 shows White raising his hands to the camera and Crummey crouching

down smoking something. Both photos were posted by Runacheckup Youngn. The photos have probative value as the posts Dulce saw on Facebook when she first recognized Crummey as the taller assailant. They further serve to corroborate her testimony regarding how she came to identify the two men. *See State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 27–28 (2014) ("If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." (quoting *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996))). Finally, the photographs link the two men and establish Crummey and White knew each other. Although these photos may be slightly prejudicial, they are not unfairly so—the presence of money does not suggest Crummey and White committed crimes to obtain it. Notably, the victims here allege a few thousand dollars in cash was stolen during the dinner party robbery, but the challenged photographs do not a depict a substantial amount of money.

### III. Admission of Jail Call

Crummey also sought to exclude a clip from a recorded jail call in which he identifies himself as Runacheckup. He argues this snippet was cumulative because the State had already admitted other evidence linking him to the Facebook account and unduly prejudicial because it was a jail call. We disagree.

The State sought to admit the jail call to corroborate testimony from Detective Khan and Dulce. As previously noted, Dulce identified Crummey in the photos Runacheckup posted, but she could not say with certainty that Crummey was the holder of the account. Crummey responded that his mentioning "Runacheckup" on the call did not establish the account belonged to him. The State replied that any prejudicial effect of the call was minimal because it was made on the day of Crummey's arrest, and the jury already knew he had been arrested.

The circuit court found the portion of the call in which Crummey identifies himself as Runacheckup was admissible so long as the State laid a proper foundation. And, since the jury already knew the date of his arrest, it would not be unfairly prejudicial for jurors to hear that Crummey made a call from jail the same day.

We find the circuit court properly admitted the short clip of the jail call into evidence. The call in which Crummey identifies himself as Runacheckup is quite probative because it supports the State's theory that Crummey was the Runacheckup Youngn whose Facebook livestream led to Dulce's identification of both suspects. By contrast, its prejudicial effect is slight because the jury had

already heard Detective Khan's testimony that Crummey was arrested the same day the recorded jail call was made.

## IV. Motion to Suppress and Issuance of Search Warrants

Crummey moved to suppress the evidence extracted from his iPhone, arguing the communications were obtained pursuant to a flawed search warrant. Crummey asserts Detective Kahn's affidavit did not set forth the probable cause required to support a proper warrant and Kahn's subsequent pretrial testimony was insufficient to establish he provided the magistrate with sworn testimony sufficient to rescue the deficient affidavit. We disagree.

"The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Evidence seized in violation of the Fourth Amendment must be excluded from trial." *State v. Dill*, 423 S.C. 534, 542, 816 S.E.2d 557, 562 (2018) (quoting *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002)). "A search or seizure is reasonable under the Fourth Amendment when it is authorized by a warrant that is supported by probable cause." *Id.* "A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014). "Our task is to decide whether the magistrate had a substantial basis for concluding probable cause existed. The term 'probable cause' does not import absolute certainty. Rather, in determining whether a search warrant should be issued, magistrates are concerned with probabilities and not certainties." *State v. Dupree*, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct. App. 2003).

In South Carolina, search warrants shall issue "only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant." S.C. Code Ann. § 17-13-140 (2014). "Sworn oral testimony is permissible to supplement search warrant affidavits which are facially insufficient to establish probable cause." *Dill*, 423 S.C. at 542, 816 S.E.2d at 562. "As to the validity of a search warrant, we have noted that '[a] magistrate's determination of probable cause to search is entitled to substantial deference . . . on review.'" *State v. Jones*, 435 S.C. 138, 143, 866 S.E.2d 558, 561 (2021) (quoting *State v. Crane*, 296 S.C. 336, 339, 372 S.E.2d 587, 588 (1988)).[3]

---

[3] Prior to oral argument, Crummey submitted a supplemental citation, *State v. Frasier*, in which our supreme court clarified that the standard for "appellate

In his affidavit submitted with the search warrant application for Crummey's iPhone 6, Detective Khan recounted:

> That on July 23, 2017, Charleston County Sheriff's Office units responded to . . . North Charleston, in reference to a home invasion and assault. Upon arrival responding units discovered that suspects had forced their way into the residence at gunpoint, held the occupant/ victims at gunpoint and then robbed them of their money. The victims also advised that during the home invasion two victims were assaulted by the suspects. During the investigation Daquan Crummey and Denali White were developed as the suspects for this home invasion. Daquan was arrested for his outstanding warrants. After Daquan was arrested he stated that the above listed cell phone was his property. It is the affiant's belief that a forensic examination of Daquan's cell phone may aid in furthering this investigation and may reveal communications between the two co-defendants. Any and all evidence recovered as a result of this search will be compared to other evidence already obtained in the investigation.

Although Detective Khan obtained search warrants in August 2017 for Crummey and White's cell phones, law enforcement was unable to search the locked iPhone because the necessary data extraction software did not yet exist. Thus, Detective Khan obtained a new search warrant for Crummey's iPhone on May 14, 2019, once

review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means we review a trial court's factual findings for any evidentiary support, but the ultimate legal conclusion—in [that] case whether reasonable suspicion exist[ed]—is a question of law subject to de novo review." 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022). Crummey urges us to filter the substantial deference accorded a magistrate's finding of probable cause through the *Frasier* lens. We find it unnecessary to consider *Frasier*'s impact here because the question before us involves the circuit court's factual finding that Detective Kahn supplemented his warrant affidavit with sworn testimony informing the issuing magistrate that Dulce identified Crummey from the photo array as one of the perpetrators of the home invasion. As the State correctly noted, such a factual finding remains subject to an "any evidence" standard of review.

such extractions could be performed.  The May 2019 warrant affidavit is identical to that provided to the magistrate in 2017.[4]

The State proffered Detective Khan's testimony in opposition to Crummey's motion to suppress.  Detective Khan recalled that he drafted warrant requests for a Samsung phone seized from White and an iPhone seized from Crummey upon their arrests.  He explained that in addition to preparing an affidavit to support a warrant request, the warrant process requires locating an available magistrate and providing the magistrate with sworn testimony.  Detective Khan testified that law enforcement sought information from the cell phones in an effort to find any accomplices who had not yet been identified and obtain other data pertinent to the investigation.  Although no accomplices were identified, the extractions revealed Crummey and White had texted about a "big lick" on the morning of the robbery.

Judge Ellen Steinberg issued the search warrants.  Detective Kahn testified that Judge Steinberg swore him in; he then explained the warrant requests, including how law enforcement developed White and Crummey as suspects.  He discussed Dulce's identification and noted that even before Dulce recognized Crummey on Facebook, he considered him a possible suspect based on her physical description of the taller assailant.  Detective Khan knew from previous encounters that Crummey hung out by "the Waylyn," an area off Dorchester Road in North Charleston.  He also told Judge Steinberg that White and Crummey had been the subjects of a traffic stop, which further established the men knew each other at the time of the robbery.  Detective Khan testified he provided Judge Steinberg with the same information in 2019 that he provided to support the 2017 warrant application.  He admitted he did not remember the specific questions Judge Steinberg asked him when he requested the warrants.

On cross examination, Crummey refreshed Detective Khan's recollection with a witness statement in which a neighbor noted she saw two men with closely shaved hair in the area around the time of the robbery.  Detective Khan admitted he did not tell Judge Steinberg about the neighbor's statement because "that was just somebody we spoke to.  That's just part of the initial investigation."

Crummey argued Detective Khan's testimony was insufficient to demonstrate the requisite probable cause because he could not remember the specifics of his

---

[4] At the State's request, Detective Khan requested additional search warrants for Crummey's phone and location data in June 2019 and March 2020.  Crummey has not challenged the 2020 warrant.

testimony to Judge Steinberg.  Crummey further asserted Detective Khan did not disclose all relevant facts to Judge Steinberg because he left out those unfavorable to his investigation, such as the neighbor's statement that the two men she saw had shaved heads while Crummey had dreads.

The State responded that the witness who gave the "close cropped" description admitted she would not be able to identify the men in a lineup.  The State further noted that because the witness felt uncomfortable around the men and "did not want them looking at her," she "side-eyed them, and kind of kept going."  Although the State acknowledged it would be preferable to have more detail in a search warrant affidavit and application, it noted warrant requests may be—and often are—supplemented with oral testimony.  The State emphasized this was not a situation in which law enforcement lied or put false information in a warrant affidavit, but one in which the written request was supplemented orally to the magistrate on more than one occasion.  Ultimately, the circuit court found Detective Khan's testimony sufficient to establish probable case because Detective Kahn informed the issuing magistrate—through sworn oral testimony—that Dulce had identified Crummey and White in their photographic lineups.

We find the circuit court did not err in upholding the validity of the search warrants.  Even though Detective Khan could not specifically recall the questions Judge Steinberg asked him, he testified that he told her he developed Crummey and White as suspects because Dulce had initially recognized them on Facebook and later identified them in six-pack photo arrays.  He specifically noted the magistrate placed him under oath.  This is important in that it distinguishes the circumstances here from those in *State v. Dunbar*, in which this court found defects in a warrant application could not be cured by an officer's oral statements because there was no evidence the officer had been placed under oath while discussing the warrant request with the magistrate by telephone.  361 S.C. 240, 248, 603 S.E.2d 615, 620 (Ct. App. 2004).

Finally, as in *State v. Brown*, we find Crummey has failed to demonstrate a *Franks*[5] violation with respect to the warrant affidavit's omission of the neighbor's description of the two men with closely shaved hair.  437 S.C. 550, 573, 878 S.E.2d 364, 376–77 (Ct. App. 2022), *cert denied* (May 24, 2023) (finding circuit court properly denied motion to suppress because the evidence did not establish

---

[5] *Franks v. Delaware*, 438 U.S. 154, 171–72, (1978) (finding that in certain circumstances, a defendant has a right to challenge the veracity of a warrant affidavit and providing a two-part test for such a challenge).

detective knowingly, intentionally, or with reckless disregard for the truth made false statements in warrant affidavit by failing to separately detail the eyewitnesses' varying descriptions of the perpetrator).  The neighbor looked at the men only briefly because she was afraid and did not want them to see her.  And, she stated she "absolutely could not" identify the men from a lineup.  More significantly, even if Detective Kahn's affidavit had included the neighbor's description, his affidavit and sworn supplemental testimony "would still provide the probable cause necessary for issuance of the warrant."  *Id.* at 573, 878 S.E.2d at 377; *see also State v. Missouri*, 337 S.C. 548, 554, 524 S.E.2d 394, 397 (1999) ("There will be no *Franks* violation if the affidavit, including the omitted data, still contains sufficient information to establish probable cause.").

**Conclusion**

Based on the foregoing, Crummey's convictions and sentence are

**AFFIRMED.**

**THOMAS and HEWITT, JJ., concur.**